2001 ND 99

STATE of North Dakota ex rel. Carol K. OLSON, Executive Director, North Dakota Department of Human Services, Plaintiff and Appellee

v.

Roxanne HARRISON, Florine Harrison as parent and guardian of Madeline Harrison, Thomas E. Rutten, Howard Nelson, Claims Adjuster, Heinrich and Company, Defendants,

and

Milwaukee Insurance Company aka Milwaukee Safeguard Insurance Group, Defendant and Appellant.

No. 20000282.

Supreme Court of North Dakota.

May 22, 2001.

Jean R. Mullen, Assistant Attorney General, Bismarck, for plaintiff and appellee.

Chris A. Edison, Storslee Law Firm, P.C., Bismarck, for defendant and appellant.

Larry B. Leventhal (argued), Larry Leventhal & Associates, Minneapolis, MN, and Thomas M. Disselhorst (on brief), Bismarck, for Amicus Curiae Spirit Lake Tribe.

MARING, Justice.

[¶ 1] Milwaukee Insurance Company, also known as Milwaukee Safeguard Insurance Group, ("Milwaukee") appeals the July 26, 2000, district court order granting summary judgment to the State of North Dakota ex rel. Carol K. Olson, Executive Director, North Dakota Department of Human Services ("State"), and the judgment entered on August 8, 2000. We affirm.

[¶ 2] In 1999, on the Spirit Lake Reservation, Tracey Dawn Makes Good was operating a vehicle owned by Amaris L. Makes Good, when the vehicle collided with one operated by Roxanne Harrison and owned by Florine Harrison. The collision resulted in the deaths of two individuals and injuries to Roxanne Harrison, Madeline Harrison, and others occupying the Harrison vehicle. The Makes Good vehicle was insured by Milwaukee with a liability limit of $50,000. The Harrison vehicle was not insured.

[¶ 3] Howard Nelson, an insurance claims adjuster for Heinrich and Co., negotiated a settlement between the parties on behalf of Milwaukee. Thomas E. Rutten, an attorney for Milwaukee, filed a petition for approval of a settlement of claims in the Spirit Lake Tribal Court ("Tribal Court"). The petition named, among others, the North Dakota Department of Human Services ("Department") as a defendant. The clerk of court for the Tribal Court mailed a copy of a notice of a June 17, 1999, hearing on the petition and a copy of the petition to the Department, which the Department received on June 4, 1999.

[¶ 4] The Department did not respond to the notice and petition it received from the clerk of the Tribal Court. After a hearing, the Tribal Court issued an order approving the proposed settlement to be paid by Milwaukee. In its order, the Tribal Court found, among other things, that the settlement agreement provided for payment of $7,600.00 to Roxanne Harrison and $8,839.72 to Florine Harrison as parent and guardian of Madeline Harrison. The Tribal Court also found:

That the Plaintiffs have not achieved a full recovery because of the limited insurance coverage available to compensate them for their claims and, therefore, the Defendants, Benson County Social Services and North Dakota Department of Human Services shall not be entitled to pursue any subrogation claims against these Plaintiffs.

The Tribal Court concluded "Benson County Social Services and the North Dakota Department of Human Services shall not be entitled to any portion of the settlement approved herein."

[¶ 5] The State sued Roxanne Harrison, Florine Harrison as parent and guardian of Madeline Harrison, Thomas E. Rutten, Howard Nelson, Heinrich and Co., and Milwaukee in district court, alleging the Department had paid for medical services received by Roxanne Harrison and Madeline Harrison at medical facilities in Devils Lake and Grand Forks, that Florine Harrison and her children, Roxanne and Madeline, had assigned to the State any claims they had against liable third parties, that the State had not been properly served in the Tribal Court proceeding, and that Roxanne Harrison, Florine Harrison on behalf of her minor child, Madeline

Harrison, and Milwaukee, among others, were liable for conversion of the money owed to the State.

[¶ 6] The district court concluded "[t]he Spirit Lake Tribal Court did not have subject matter jurisdiction nor was proper service made upon the State," and granted the State's motion for summary judgment in an order issued July 26, 2000. The judgment, entered on August 8, 2000, ordered Roxanne Harrison to pay the State $5,837.43, ordered Madeline Harrison and her guardian to pay the State $6,402.02, authorized the State to take up to $6,402.02 from a trust created for Madeline Harrison to pay the judgment against her, and ordered Milwaukee to pay the State $12,239.45, "with said amount reduced by any amounts collected from Roxanne Harrison and Madeline Harrison and her guardian."

[¶ 7] On appeal, Milwaukee contends: (1) the district court erred in holding the Tribal Court did not have subject matter jurisdiction and the State was not properly served; (2) the Tribal Court's order is entitled to recognition as a matter of comity; and (3) the district court erred in denying Milwaukee's motion for summary judgment based on the State's failure to exhaust the remedies available to it in Tribal Court.

I

[¶ 8] In granting the State's motion for summary judgment, the trial court held "[t]he Spirit Lake Tribal Court did not have subject matter jurisdiction nor was proper service made upon the State."

[¶ 9] "[I]mmunity from suit is a fundamental aspect of the sovereignty" enjoyed by states under the United States Constitution. *Alden v. Maine*, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). Sovereign immunity, however, "bars suits only in the absence of consent."

*Id.* at 755, 119 S.Ct. 2240. Article I, § 9, N.D. Const., provides, in part: "Suits may be brought against the state in such manner, in such courts, and in such cases, as the legislative assembly may, by law, direct." That provision "authorizes the Legislature to direct the manner, the courts, and the cases in which suits may be brought against the State." *Bulman v. Hulstrand Constr. Co.*, 521 N.W.2d 632, 637 (N.D.1994). Section 32–12–02, N.D.C.C., provides, in part:

An action respecting the title to property, or arising upon contract, may be brought in the district court against the state the same as against a private person.

Section 32–12.2–04(5), N.D.C.C., provides:

A person bringing a legal action against the state or a state employee for a claim shall deliver a copy of the summons, complaint, or other legal pleading in which the claim is first asserted in the action to the director of the office of management and budget at the time the summons, complaint, or other legal pleading is served in the action. This provision is in addition to any applicable rule of civil procedure.

[¶ 10] "Article VI, § 3, provides in part that '[t]he supreme court shall have authority to promulgate rules of procedure ... to be followed by all the courts of this state.'" *State v. Hanson*, 558 N.W.2d 611, 614 (N.D.1996). This Court has promulgated N.D.R.Civ.P. 4(b)(4), which provides the manner in which a court acquires personal jurisdiction over the State or a state agency, as with a private person, is through a voluntary appearance or through service of process as provided by a statute, or service of process in accordance with N.D.R.Civ.P. 4. The State did not voluntarily appear in Tribal Court, and no statutory service has been alleged. For

a court to otherwise acquire personal jurisdiction over the State, N.D.R.Civ.P. 4(d)(2)(F) requires personal service of process be made:

> upon the state, by delivering a copy of the summons to the governor or attorney general or an assistant attorney general and, upon an agency of the state, such as the Bank of North Dakota or the State Mill and Elevator Association, by delivering a copy of the summons to the managing head of the agency or to the attorney general or an assistant attorney general.

■ [¶ 11] "[P]ersonal jurisdiction depends on proper service of process." *Helmers v. Sortino*, 545 N.W.2d 796, 799 (N.D.1996). Under N.D.R.Civ.P. 4(d)(2), "merely because an individual is an employee of a defendant does not cloak that individual with authority to receive process for the defendant, and the plaintiff has the burden to establish that the authority to receive service of process exists between the defendant and the individual served." *Brakke v. Rudnick*, 409 N.W.2d 326, 330 (N.D.1987). Applying § 7426, Comp. Laws 1913, which provided in part: "The summons shall be served by delivering a copy thereof ... [i]f the defendant is the state, to the governor or attorney-general," this Court held, where "[t]he record does not disclose any service on the Attorney General or the Governor ... [t]he court had no jurisdiction of the defendant state of North Dakota." *Company A, First Regiment, Nat'l Guard Training Sch. v. State*, 58 N.D. 66, 73, 224 N.W. 661, 664 (1929). This law was previously codified as § 6838, Rev.Code 1905, and § 5252, Rev.Code 1899, and was later codified as § 28–0605, N.D.R.C.1943, which was superseded by N.D.R.Civ.P. 4.

■ [¶ 12] In light of the foregoing constitutional, legislative and judicial history, the State has not consented to suit without proper service of process. The Legislature and this Court have determined a court may not acquire jurisdiction over the state unless the governor or the attorney general (or, under N.D.R.Civ.P. 4(d)(2)(F), an assistant attorney general or the managing head of an agency of the state) has been served with process in accordance with statute or court rules of procedure.

■ [¶ 13] Here, the clerk of the Tribal Court mailed a copy of a notice of a June 17, 1999, hearing on the petition and a copy of the petition to "ND Dept. of Human Services ... ATTN: Raymond A. Feist, ADmin." Feist is an employee of the Department, who on May 20, 1999, sent a letter to Howard Nelson of Heinrich and Co., advising that the State intended to "file a claim on behalf of the Harrisons for medical bills" and that a Medicaid assignment "makes the state's claim priority [sic] to any other claim." There was no service of process on the governor, the attorney general, an assistant attorney general, or the managing head of any agency of the State. No official with authority to accept service of process for the State was served in accordance with N.D.R.Civ.P. 4. We conclude, therefore, the district court did not err in ruling the State was not properly served and the Tribal Court did not acquire personal jurisdiction over the State.[1]

## II

■ [¶ 14] Milwaukee contends the Tribal Court order is entitled to recognition as a matter of comity under N.D.R.Ct. 7.2, which provides, in part:

---

1. Because we have concluded the Tribal Court lacked personal jurisdiction over the State, we need not determine if the Tribal Court had subject matter jurisdiction.

(b) Recognition. The judicial orders and judgments of tribal courts within the state of North Dakota, unless objected to, are recognized and have the same effect and are subject to the same procedures, defenses, and proceedings as judgments of any court of record in this state.

This rule also provides: "If recognition of a judgment is objected to by a party, the recognizing court must be satisfied ... that the ... tribal court had personal and subject matter jurisdiction." N.D.R.Ct. 7.2.

[¶ 15] Before adopting N.D.R.Ct. 7.2, our Court recognized a tribal court judgment as a matter of comity in *Fredericks v. Eide–Kirschmann Ford, Mercury, Lincoln, Inc.*, 462 N.W.2d 164 (N.D.1990). Relying largely on *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), we summarized comity between nations:

Comity is a nation's voluntary recognition and execution of another nation's laws where the rights of individuals are concerned. *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895).... The court enunciated a number of factors to consider in determining the conclusiveness of a foreign judgment as a matter of comity:

"When an action is brought in a court of this country, by a citizen of a foreign country against one of our own citizens, to recover a sum of money adjudged by a court of that country to be due from the defendant to the plaintiff, and the foreign judgment appears to have been rendered by a competent court, having jurisdiction of the cause and of the parties, and upon due allegations and proofs, and opportunity to defend against them, and its proceedings are according to the course of a civilized jurisprudence, and are stated in a clear and formal

record, the judgment is prima facie evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that by the principles of international law, and by the comity of our own country, it should not be given full credit and effect."

*Fredericks*, 462 N.W.2d at 167, quoting *Hilton*, 159 U.S. at 205–206, 16 S.Ct. 139. We said: "When enforcement of a foreign judgment is sought as a matter of comity, jurisdiction of the foreign court is presumed." *Fredericks*, 462 N.W.2d at 168. We held Eide Kirschmann Ford, Mercury, Lincoln, Inc., "did not overcome the presumption that the tribal court had jurisdiction of the cause and the parties," and concluded "the district court should have enforced the tribal court judgment as a matter of comity." *Id.* at 170–71.

[¶ 16] Under *Fredericks*, 462 N.W.2d 164, and N.D.R.Ct. 7.2, if a tribal court order or judgment is to be recognized as a matter of comity, the tribal court must have had personal and subject matter jurisdiction. *See also Wilson v. Marchington*, 127 F.3d 805, 811 (9th Cir.1997) ("the existence of both personal and subject matter jurisdiction is a necessary predicate for federal court recognition and enforcement of a tribal judgment."). Here, the presumption the Tribal Court had personal jurisdiction over the State has been overcome. We conclude the Tribal Court did not acquire personal jurisdiction over the State, because the State was not served with process in accordance with N.D.R.Civ.P. 4 and, therefore, the Tribal Court's order is not appropriate for recognition as a matter of comity.

### III

[¶ 17] Relying on *Fredericks v. Eide-Kirschmann Ford, Mercury, Lincoln, Inc.,* 462 N.W.2d 164 (N.D.1990); *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987); and *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), Milwaukee contends the trial court erred in denying it summary judgment, because of the State's failure to exhaust the remedies available to it in Tribal Court.

[¶ 18] In *Fredericks,* 462 N.W.2d at 168, we held Eide should have exhausted its tribal court remedies: "If the tribal court erred in its construction and application of the tribal repossession statute, Eide's remedy was to prosecute its appeal of the original tribal court judgment to completion and to appear in the tribal court after remand and appeal any adverse judgment that might have been entered." *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987), and *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985), require generally that a party challenging a tribal court's assertion of subject matter jurisdiction exhaust its tribal court remedies before challenging the tribal court's jurisdiction in federal court. In *Strate v. A-1 Contractors,* 520 U.S. 438, 453, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997), the United States Supreme Court observed that those decisions "enunciate only an exhaustion requirement, a 'prudential rule,' based on comity," and do not expand tribal court jurisdiction.

[¶ 19] *Iowa Mut. Ins. Co. v. LaPlante,* 480 U.S. 9, 16, 107 S.Ct. 971, 94 L.Ed.2d 10 (1987) required exhaustion of tribal court remedies as a matter of comity, because allowing earlier access to a federal court "would place it in direct competition with the tribal courts, thereby impairing the latter's authority over reservation affairs," and allowing adjudication of a tribal court's subject matter jurisdiction "by any nontribal court also infringes upon tribal lawmaking authority, because tribal courts are best qualified to interpret and apply tribal law." *National Farmers Union Ins. Cos. v. Crow Tribe,* 471 U.S. 845, 856–857, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985) required exhaustion of tribal court remedies as a matter of comity to allow the tribal court to "evaluate the factual and legal bases for the challenge," minimize the risk of a procedural nightmare by allowing the tribal court to "determine its own jurisdiction and to rectify any errors it may have made," to "encourage tribal courts to explain to the parties the precise basis for accepting jurisdiction," and to "provide other courts with the benefit of their expertise in such matters in the event of further judicial review." Those kinds of considerations attached to issues of subject matter jurisdiction are not implicated in a case like this one, where the question is simply whether the Tribal Court lacked personal jurisdiction over the State of North Dakota.[2] In this case the lack of proper service on the State prevented the Tribal Court from acquiring personal jurisdiction over the State. We conclude the State was not required to exhaust remedies available to it in Tribal Court.

---

2. In *National Farmers,* the court indicated that exhaustion of tribal court remedies is not required in all instances:

> We do not suggest that exhaustion would be required where an assertion of tribal jurisdiction "is motivated by a desire to harass or is conducted in bad faith," or

where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction.

471 U.S. at 856, n. 21, 105 S.Ct. 2447 (citation omitted).

## IV

[¶ 20]   The order and judgment are affirmed.

[¶ 21] VANDE WALLE, C.J., and NEUMANN, SANDSTROM and KAPSNER, JJ., concur.